# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MBC VENTURES, LLC D/B/A
ACQUISITION MANAGEMENT GROUP,

      Plaintiff,

v.

MINIVENTURES OF NY, INC. and SHAYLA
M. WILLIAMS a/k/a SHAYLA MONET
WILLIAMS,

      Defendants.

3:20 - CV - 762 (CSH)

AUGUST 20, 2021

---

## ORDER RE:   PLAINTIFF'S MOTIONS FOR JUDGMENT BY DEFAULT AGAINST MINIVENTURES OF NY, INC. and SHAYLA M. WILLIAMS  [Doc. 23 and Doc. 24]

**HAIGHT, Senior District Judge:**

### I.  INTRODUCTION

In this diversity action, Plaintiff MBC Ventures, LLC (d/b/a Acquisition Management Group) (herein "Plaintiff" or "MBC") seeks to recover amounts owed under a loan agreement for $100,000 (dated May 14, 2013, and modified April 14, 2015) entered into between the Bank of America ("Bank") and Miniventures of NY, Inc., as "Borrower," and guaranteed by Shayla M. Williams.[1] Doc. 1, ¶¶ 5, 8; Ex. 1, 2. According to Plaintiff,  Miniventures defaulted on the loan and Williams

---

[1] Plaintiff has represented to the Court that the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a)(1). However, as described in Part II.B.1., *infra*, Plaintiff has failed to adequately establish the citizenship of Defendant Williams.  Accordingly, Plaintiff must confirm for the Court that Williams' citizenship is in fact diverse in order to confer subject matter jurisdiction over the case in this Court.

1

failed to perform as guarantor.[2] *Id.* ¶¶ 12, 23, 27. *See also* Ex. 6 ("Continuing and Unconditional Guaranty" of Guarantor Shayla M. Williams).

On or about September 5, 2018, Bank of America assigned the loan to Plaintiff MBC Ventures, who initiated this action to recover the remaining amounts owed on the loan plus attorneys' fees, which were explicitly included in the original agreement at § 9.6 and the "Loan Agreement Modification" at §3.1.5. *Id.* ¶¶ 7, 10, 14 and Ex. 4 ("Bill of Sale" between Bank of America and MBC Ventures).[3] Defendant Williams has allegedly "failed to pay her guaranty," *id.* ¶ 27, and owes Plaintiff attorneys' fees under the "Continuing and Unconditional Guaranty" (herein "Guaranty") (Ex.

---

[2] The Court notes that the Loan Agreement and its modified version were signed by the "Borrower," respectively, as "Shayla M. Williams, Chief Executive Officer" of Miniventures of NY, Inc., and "Shayla M. Williams, President" of Miniventures of NY, Inc. Doc. 1, at 20, 28. On the Loan Modification Agreement, Shayla M. Williams also signed a "Consent" provision "Individually." *Id.* at 28.

[3] Section 9.6 of the Loan Agreement, captioned "Attorneys' Fees," states in relevant part:

> The Borrower shall reimburse the Bank for any reasonable costs and attorneys' fees incurred by the Bank in connection with the enforcement or preservation of any rights or remedies under this Agreement . . . . In the event of a lawsuit or arbitration proceeding, the prevailing party is entitled to recover costs and reasonable attorneys' fees incurred in connection with the lawsuit or arbitration proceeding, as determined by the court or administrator.

Doc. 1, at 18.

In addition, § 3.1.5 of the Loan Modification Agreement provides:

> To the extent permitted by law, [the] Bank shall have received reimbursement, . . . of all costs and expenses incurred by [the] Bank in connection with this Amendment as set forth in the Disbursement and Fee Statement dated April 14, 2015, including, as applicable, . . . legal fees and expenses of [the] Bank's counsel, including the market value of services of in-house counsel.

*Id.* at 25.

2

6) at § 23 of the "Loan Modification Agreement." *Id.* at 44-45 ("Guarantor agrees to pay all reasonable attorneys' fees . . . and all other costs and expenses that may be incurred by Bank (a) in the enforcement of this Guaranty").[4]

On September 16, 2020, Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a). Doc. 15, 16. As of that date, Defendants had been served with the summons and Complaint, the period within which to respond to the Complaint expired, and neither Defendant appeared or otherwise defended in the action. Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Accordingly, the Clerk entered default against each Defendant. Doc. 19, 20.

Plaintiff MBC now moves for entry of default judgment against both Defendants under Rule 55(b), Fed. R. Civ. P. In particular, Plaintiff requests that the Clerk enter final judgment against each Defendant in the amount specified in the September 17, 2020, affidavits of debt and attorneys' fees "because the amount due is a sum certain that can easily be calculated." Doc. 23, at 1; Doc. 24, at 1. Plaintiff thereafter updated the amount of debt sought in a filing dated March 30, 2021. Doc. 27, at 1 (asserting that Defendants owed Plaintiff $124,748.38 in principal and interest as of that date).

---

[4] Plaintiff alleges that on or about May 28, 2020, Defendant Miniventures owed Plaintiff a total of $115,556.14, including principal and interest, and attorneys' fees. Doc. 1, ¶ 18. In addition, "interest continues to accrue at the rate of $30.04 per day at the default interest rate of 13% based upon a 360[-] day year after Friday, May 29, 20[20]." *Id.* ¶ 19. As a delinquent guarantor, Defendant Williams allegedly owes Plaintiff the same amounts. *Id.* ¶ 28.

In its memorandum of law in support of entry of default by the Clerk, Plaintiff updated the amount owed by Defendants to $116,727.70 (including principal and interest) as of July 6, 2020. Doc. 14, at 8. Per a more recent update by Plaintiff, as of March 30, 2021, Defendants owed MBC $124,748.38 in principal and interest. Doc. 27, at 1.

## II.  DISCUSSION

### A.  Legal Standard Governing Default Judgment

Pursuant to Federal Rule of Civil Procedure 55, the process of obtaining a default judgment in a federal civil action involves two distinct steps.  As the Second Circuit summarized in *New York v. Green*, 420 F.3d 99 (2d Cir. 2005):

> The first step is to obtain a default. When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention, and Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended. Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b). Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not an infant or incompetent person. *See* Fed. R. Civ. P. 55(b)(1).  "In all other cases," Rule 55(b)(2) governs, and it requires a party seeking a judgment by default to apply to the court for entry of a default judgment.

420 F.3d at 104.

Moreover, "[i]t is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of S. Conn. Ltd. Partnership v. Smith*, 141 F.Supp.2d 277, 281 (D. Conn. 2001) (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir.1999)).  *See also World Wrestling Entertainment, Inc. v. Ausbert De Arce*, No. 3:03-CV-1568 (DJS), 2006 WL 236752, at * 1 (D. Conn. Jan. 27, 2006) (same).  Generally, in civil cases, "where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party." *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir.1984).

"It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of New York v. Mickalis Pawn*

4

*Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (citation and internal quotation marks omitted). Once a district court determines that a defendant is in default, all reasonable inferences should be drawn in favor of the prevailing party. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). However, "[a] court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment." *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y.  Pension Fund v. Moulton Masonry & Constr., LLC*,  779 F.3d 182, 188 (2d Cir. 2015). "Rather, the court may, on plaintiffs' motion, enter a default judgment *if liability is established* as a matter of law *when the factual allegations of the complaint are taken as true*." *Id.* (emphasis added) (citing *Mickalis Pawn Shop*, 645 F.3d at 137).

Therefore, to insure proper entry of default judgment, it is incumbent on the Court to review whether the allegations of the complaint state a legal claim. *Au Bon Pain Corp.,* 653 F.2d at 65*; see also  TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("Indeed, we have recently suggested that, prior to entering default judgment, a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.'") (quoting *Mickalis Pawn Shop*, 645 F.3d at 137) (internal quotation marks omitted).[5]  *See Priestley*

---

[5]  The Court notes that in a footnote in the "concurrence in part" in *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015), District Judge Korman, sitting by designation in the Second Circuit, wrote:

> While there is dictum in *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981), suggesting that a district judge "need not agree that the alleged facts constitute a valid cause of action," that case did not allude to the prior Second Circuit cases to the contrary, and relied solely on the then-current version of § 2688 of Wright & Miller, which has not changed. *Id.*
> . . .
> [T]here is recent Second Circuit authority relying solely on the dictum in *Au Bon Pain*, and overlooking the Second Circuit cases to the contrary and discussed above, that hold that a district court has discretion to determine whether the allegations in

*v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir.2011) (remanding case, reversing district court's

entry of default judgment against defendant, because complaint's well-pleaded allegations, accepted

as true, failed to adequately support the application of the de facto merger doctrine, which was the

alleged basis for defendant's liability); *Evanauskas v. Strumpf*, No. 3:00-CV-1106 (JCH), 2001 WL

777477, at *1 (D. Conn. June 27, 2001) ("[B]efore [default] judgment can be entered, the court must

determine whether plaintiff's factual allegations are sufficient to state a claim for relief on each of

the causes of action for which the plaintiff seeks judgment by default.") (citing *Au Bon Pain Corp.,*

653 F.2d at 65*); LaBarbera v. Interstate Payroll Co.*, No. 07-CV-1183 (FB)(MDG), 2008 WL

766982, at *1 (E.D.N.Y. Mar. 20, 2008) (Upon default, "[a] district court must nevertheless

determine whether the allegations state a claim upon which relief may be granted . . . .") (citing *Au*

*Bon Pain Corp*., 653 F.2d at 65); *Leider v. Ralfe*, No. 01-CV-3137 (HB)(FM), 2004 WL 1773330,

---

the complaint, taken as true, establish a cause of action. *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir.2011); *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d Cir. 2011); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In two of these cases, the language can arguably be viewed as dictum because the alternative holding in one case was that the complaint stated a cause of action, *Finkel*, 577 F.3d at 84, and the holding in the other case that the issue was procedurally forfeited, *Mickalis*, 645 F.3d at 137. Moreover, in the third case the allegations in the complaint were not well-pleaded because they not only failed to support the theory of liability alleged, but "actually disproved it." *Priestley*, 647 F.3d at 506.1 Under these circumstances, we need not resolve the conflict between the earlier and later cases because the district court ordered "that a default judgment be entered against [the] defendants . . . with the amount of the judgment to be determined after an inquest before . . . the magistrate judge.'" *Default J. & Inquest Order, Greathouse v. JHS Sec., Inc.*, No. 11–cv–7845 (S.D.N.Y. March 15, 2012), ECF No. 15.

784 F.3d at 121-22.  Discussion in a partial concurrence does not create binding precedent.  Unless and until the Second Circuit states otherwise, the holding in *Au Bon Pain* – that district courts, when considering default judgment, have discretion to determine whether the allegations in the complaint state a cause of action – remains in effect.

at *7 (S.D.N.Y. July 30, 2004) ("[E]ven after [a] default, . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.") (citation and internal quotation marks omitted).

Furthermore, "it is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp*., 973 F.2d 155, 158 (2d Cir.1992)).  Thus, upon default a district court should accept "as true all of the factual allegations of the complaint, *except those relating to damages*." *Au Bon Pain Corp.,* 653 F.2d at 65 (emphasis added) (citations omitted).

With respect to damages, under Federal Rule of Civil Procedure 55(b)(1), "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."  Fed. R. Civ. P. 55(b)(1).

However, unlike damages, attorneys' fees are not  "sums certain" under Rule 55(b)(1) in that they require a judicial determination as to what constitutes reasonable fees.  *Nat'l Automatic Sprinkler Indus. Apprentice and Training Fund v. H.G. Sprinklers, Inc.,*No. 3:10-CV-252-CSH, 2011 WL 773444, at * 1 (D. Conn. Feb. 25, 2011).  *See also  451 Mktg., LLC v. Namco, LLC*, No. 3:17-CV-01927(MPS), 2019 WL 11894409, at *3 (D. Conn. Sept. 30, 2019)*; Ace Grain Co. v. Am. Eagle Fire Ins. Co. of N.Y.*, 11 F.R.D. 364, 366 (S.D.N.Y. 1951). Therefore, under Rule 55(b)(1), the Clerk cannot, as in this case,  enter judgment with respect to an award that includes attorneys'

fees.

"If a claim is not for a sum certain, the amount of damages must be ascertained by the District Court under Rule 55(b)(2)." *451 Mktg.*, 2019 WL 11894409, at *3 (citing *D'Orange v. Feely*, 101 F.3d 1393 (2d Cir. 1996)). In such cases, under Rule 55(b)(2), "[t]he court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2)(A)-(D). "That rule allows but does not require the district judge to conduct a hearing." *Bricklayers & Allied Craftworkers*, 779 F.3d at 189 (quoting *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir.1991)). For example, in circumstances where there is no proven basis for the damages requested, the court may conduct a hearing to fix the proper amount of damages. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997). *See also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) ("Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages."); *Holt v. Animation Collective, Inc.*, No. 13 CIV. 2552 KBF, 2014 WL 1413548, at *3 (S.D.N.Y. Apr. 10, 2014) (same) (quoting *Cement & Concrete Workers*, 699 F.3d at 234); 10A Charles Alan Wright and Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2688 (4th ed. April 2021) ("[W]hen it seems advantageous, a court may conduct a hearing to determine whether to enter a judgment by default.").

As an alternative to holding a hearing, a court may rely on "detailed affidavits and documentary evidence," as well as the allegations set forth in a plaintiff's complaint, to determine the sufficiency of a default judgment claim. *Tamarin*., 13 F.3d 54. *See also Action S.A.*, 951 F.2d at 508 (Rule 55(b)(2) "does not require the district judge to conduct a hearing" on damages when

there is a basis for damages specified (*e.g.*, affidavits, documentary evidence)); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir.1993) (A district court may forgo an evidentiary hearing "as long as it ensure[s] that there [is] a basis for the damages specified in a default judgment."); *NCM Contracting Group LP v. Asset Recovery Group, LLC*, No. 3:11–cv–1753 (SRU), 2014 WL 2480000, at *2 (D. Conn. June 3, 2014) (Plaintiff's "exhibits and affidavits are sufficient to award damages for each of its breach of contract claims.") (citing *Fustok*, 873 F.2d at 40).

**B.      Plaintiff's Motions for Default Judgment pursuant to Fed. R. Civ. P. 55(b)**

*1. Subject Matter Jurisdiction*

In the case at bar, as to step one in the process toward default judgment, the Clerk has entered default as to both defendants. Doc. 19 & 20. Neither has appeared in the action nor pled. Nonetheless, any ruling is void in the absence of subject matter jurisdiction. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997) (holding that "the default judgment itself [may be] void for lack of subject matter jurisdiction"); *Cook v. Toidze*, 950 F. Supp. 2d 386, 392 (D. Conn. 2013) (holding default judgment "void for lack of subject matter jurisdiction"). Therefore, to obtain default judgment, the Plaintiff must first establish subject matter jurisdiction.

Pursuant to Article III of the Constitution, a federal court has limited jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing *Marbury v. Madison*, 1 Cranch (5 U.S.) 137, 173-80 (1803)). In general, it may only exercise subject matter jurisdiction if either: (1) the plaintiff sets forth a colorable claim arising under the Constitution or federal statute, creating "federal question" jurisdiction, 28 U.S.C. § 1331; or (2) there is complete diversity of citizenship

between plaintiff and all defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a)(1). *Strawbridge v. Curtiss*, 3 Cranch 267, 1806 WL 1213, at *1 (February Term 1806). *See also Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (delineating two categories of subject matter jurisdiction).

It is incumbent on a federal court to determine with certainty whether it has subject matter jurisdiction over a case pending before it. If necessary, the court must consider its subject matter jurisdiction *sua sponte* – "on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).  Courts thus "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id.* at 514. *See also, e.g., Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) ("Although neither party has suggested that we lack appellate jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*."); *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991) ("Although we would not normally consider an issue not raised below, the lack of subject matter jurisdiction may be raised at any time, by the parties, or by the court *sua sponte*.").

Unlike personal jurisdiction, "[s]ubject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at  514 (citation omitted). *See* Fed. R. Civ. P. 12(h)(3)( "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). *See also, e.g., Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.") (citing Fed. R.

10

Civ. P. 12(h)(3));  *Daly v. Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) ("A case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it.")(quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)), *cert. denied*, 140 S. Ct. 1117, 206 L. Ed. 2d 185 (2020); *Thompson v. United States,* 795 F. App'x 15, 17 (2d Cir. 2019) ("Dismissal of a complaint for lack of subject matter jurisdiction is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'") (quoting *Makarova,* 201 F.3d at 113)*, cert. denied,* 140 S. Ct. 2675, 206 L. Ed. 2d 826 (2020).

In the case at bar, Plaintiff has included only state law claims for breach of contract – breaches of loan agreements and a "guaranty" – in the Complaint.  Therefore, there is no arguable basis upon which the Court may assert "federal question" subject matter jurisdiction over this action, 28 U.S.C. § 1331.[6]  Plaintiff must, thus, establish diversity of citizenship.

In order for diversity of citizenship to exist in this action, Plaintiff's citizenship must be diverse from that of all defendants. *See, e.g.,   St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80  (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.") (citing, *inter alia,   Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373-74 (1978)). Moreover, "diversity must exist at the time the action is commenced." *Universal Licensing Corp. v. Lungo,* 293 F.3d 579, 581 (2d Cir. 2002).  *See also Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir.1999) ("Satisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed – the 'time-of-filing' rule.").

---

[6]  28 U.S.C. § 1331, captioned "Federal question," provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

In addition, there must be a minimum amount in controversy exceeding "$75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a).  Plaintiff must thus  allege in good faith that it sustained sufficient damages to invoke the Court's subject matter jurisdiction based on diversity of citizenship.

 Plaintiff  MBC Ventures has represented to the Court that the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a)(1).  Doc. 1 ("Verified Complaint"), ¶¶ 4, 22.  Plaintiff avers that it is a South Carolina limited liability company composed of two members, Brad Bateman and Cliff Bateman, who are both citizens of South Carolina.  *Id.* ¶¶ 1-2.  For diversity purposes, "a limited liability company . . . takes the citizenship of each of its members." *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt.*, 692 F.3d 42, 49 (2d Cir. 2012) (citing *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000)).  Plaintiff is a citizen of South Carolina.

Defendant Miniventures of NY, Inc. is a New York corporation with its principal place of business located at 429-437 E. 148th Street, Bronx, New York.  Doc. 1, ¶ 3.  Miniventures is thus a citizen of New York.  *See* 28 U.S.C. § 1332(c) ("a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business").

Plaintiff alleges that Defendant Shayla M. Williams "*resides* at 442 Main Avenue #11, Norwalk, Connecticut." Doc. 1, ¶ 21 (emphasis added).  However, it is "well-established that allegations of residency alone cannot establish citizenship." *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 102-03 (2d Cir. 1997) (citing *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996)). Rather, an individual's citizenship for diversity purposes is determined by his or her *domicile*, as opposed to  *residence*. *See Palazzo v. Corio*, 232 F.3d 38, 42

12

(2d Cir. 2000). *See also John Birch Soc. v. Nat'l Broad. Co.*, 377 F.2d 194, 199 (2d Cir.1967) ("[I]t has long been held that a statement of residence, unlike domicile, tells the court only where the parties are living and not of which state they are citizens."). "In general, the domicile of an individual is his true, fixed and permanent home and place of habitation"—*i.e*, "the place to which, whenever he is absent, he has the intention of returning." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)).

Because Plaintiff has simply alleged that Defendant Williams resides in Norwalk, Connecticut, it has failed to establish her citizenship. Plaintiff has failed to plead sufficient facts to prove her citizenship on the date this action commenced. Accordingly, Plaintiff must confirm for the Court that Williams' citizenship is in fact diverse in order to establish the Court's subject matter jurisdiction.

In the event subject matter jurisdiction is established, with respect to entry of default judgment against Miniventures and/or Williams, as Plaintiff requests, Doc. 23 & 24, the Court must review the allegations of the Complaint to determine whether they state a legal claim pursuant to *Au Bon Pain Corp.,* 653 F.2d at 65. To expedite a potential judgment, the Court will perform this review at present, but enter no judgment unless or until subject matter jurisdiction is established.

### 2. *Plaintiff's Claims*

#### a. Breach of Contract

Under Connecticut law, "[t]he elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Webster Bank, N.A. v. GFI Groton, LLC*, 157 Conn. App. 409, 418-19 (2015) (quoting *Hawley Avenue Associates, LLC v. Robert D. Russo, M.D. & Associates Radiology, P.C.*, 130 Conn. App.

823, 832 (2011)) (internal quotation marks omitted).

"[I]n order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties . . . and the identities of the contracting parties must be reasonably certain." *Ubysz v. DiPietro*, 185 Conn. 47 , 51 (1981) (internal citations omitted). *See also BRJM, LLC v. Output Systems, Inc.*, 100 Conn.App. 143, 152 (2007) (same), *cert. denied*, 282 Conn. 917 (2007).

"Whether a contract has been breached ordinarily is a question of fact, subject to the clearly erroneous standard of review." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 431 n. 5 (2004) (citing *Strouth v. Pools by Murphy & Sons, Inc.*, 79 Conn.App. 55, 59 (2003)). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.... In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." *Gordon v. Tobias*, 262 Conn. 844, 849 (2003) (quoting *Maharishi Sch. Vedic Scis., Inc. v. Connecticut Const. Assocs. Ltd. P'ship,* 260 Conn. 598, 605 (2002)).

### b. Guaranty

"A guarantee is a promise to answer for another's debt, default or failure to perform a contractual obligation." *JP Morgan Chase Bank v. Winthrop Properties*, 312 Conn. 662, 675 (2014) (collecting cases). "As a contractual obligation separate from the contractual agreement between the lender and borrower, a guarantee imports the existence of two different obligations: the obligation of the borrower and the obligation of the guarantor." *Id*. (citing *Regency Savings Bank v. Westmark Partners*, 59 Conn. App. 160, 164 (2000), 38 Am. Jur. 2d 950, and Guaranty § 4 (2010)). "[A]

14

guarantee agreement is a separate and distinct obligation from that of the note or other obligation."

*JP Morgan Chase Bank*, 312 Conn. at 675 (citing *Carpenter v. Thompson*, 66 Conn. 457, 463–64

(1895)). The guarantor's liability arises from what he or she agreed to in the guaranty. *Id.* at 676.

Specifically, it "does not arise from the debt or other obligation secured by the mortgage; rather, it

flows from the separate and distinct obligation incurred under the guarantee contract." *Id.* (collecting

cases). Moreover, a continuing guaranty, one unlimited as to duration, remains in effect "until

revoked by the guarantor or extinguished by some rule of law." *Associated Catalog Merchandisers,*

*Inc. v. Chagnon*, 210 Conn. 734, 742 (1989) (citation omitted).

### 3. *Default against Miniventures and Williams*

In determining whether default judgment should enter against Miniventures, the Court has

reviewed the Verified Complaint to examine the well-pleaded allegations of Plaintiff's breach of

contract claim regarding the Loan Agreement and Loan Agreement Modification and breach of

Guaranty. The Court finds that the Complaint states legal claims for breach of the loan contract –

*i.e.,* the loan agreement as modified – against Miniventures and breach of the guarantee by

Williams.

In particular, pursuant to the "Loan Agreement" and "Loan Modification Agreement," Doc.

1, at Ex. 1-2, Bank of America extended a $100,000 line of credit to Miniventures. Doc. 1, at 9, 23.

The parties made various written promises, constituting adequate consideration for the loan, as

modified. Bank of America advanced the specified funds to Miniventures under the loan agreement,

but Miniventures failed to make the requisite payments due on January 14, 2016, February 14, 2016,

March 14, 2016, and April 14, 2016. *Id.* at 30 (Ex. 3). Bank of America then accelerated the full

amount due on April 18, 2016, and required payment by April 28, 2016. *Id.* (Complaint) ¶¶11-12,

and Ex. 3.  Miniventures made no subsequent payment, and Williams failed to pay the amounts she had guaranteed. *Id.* ¶¶ 16, 27.

In addition, under the "Continuing and Unconditional Guaranty," "[f]or valuable consideration," Shayla M. Williams had promised to pay the lender Bank of America  "in lawful money of the United States, any and all Indebtedness of Miniventures of NY, Inc. ('Borrower') to [the] Bank when due . . . and at all times thereafter."  Doc. 1, at 40 (Ex. 6).  Her obligation to make said payment was "independent of the obligations of Borrower or any other guarantor," and a "separate action" could be "brought and prosecuted against [her] whether [said] action [was] brought against Borrower." *Id.* at 41.  Moreover, Williams' liability as Guarantor explicitly "continu[ed] and relate[d] to any Indebtedness, including that arising *under successive  transactions* which [would] either continue the Indebtedness or from time to time renew it after it ha[d] been satisfied."  *Id.* at 40 (emphasis added).  Williams signed the Guaranty on May 14, 2013, the same date the "Loan Agreement"  was originally entered between the Bank of America and Miniventures.[7]  *Id.* at 48.

Pursuant to Connecticut law, Williams guaranteed Miniventures' indebtedness to the Lender for good cause and on a continuing basis, thereby encompassing the debt owed under the Loan Agreement and the Loan Modification Agreement.  By failing to make the payments due by Miniventures, she breached the Guaranty.

The debt was thereafter assigned from Bank of America to Plaintiff "MBC Ventures, LLC" on September 5, 2018.  Doc. 1 (Ex. 4).  As of July 6, 2020, the total principal and interest owed to MBC were $116,727.70.  Doc. 14, at 8.  Moreover, per an update by Plaintiff as of March 30, 2021,

---

[7]   The Court notes that in addition to signing the "Loan Modification Agreement" as "President" of Miniventures of NY, Inc., Williams signed "Individually" as "Guarantor." Doc. 1, at 28.

Defendants owed MBC $124,748.38 in principal and interest. Doc. 27, at 1.

In addition, Miniventures owes Plaintiff costs and attorneys' fees pursuant to the terms of the Loan Agreement (§ 9.6) and its modification (§ 3.1.5).  Doc. 1, at 18, 25.   Section 9.6 of the Loan Agreement, captioned "Attorneys' Fees," specifies that the "Borrower [Miniventures] shall reimburse the Bank [of America] for any reasonable costs and attorneys' fees incurred by the Bank in connection with the enforcement or preservation of any rights or remedies under this Agreement," including "in connection with any amendment." *Id.* at 18. This provision further states that "[i]n the event of a lawsuit . . . the prevailing party is entitled to recover costs and reasonable attorneys' fees incurred in connection with the lawsuit."  *Id.*   When the Agreement was amended, § 3.15 of the "Loan Modification Agreement" provided that the "Bank [of America] shall have received reimbursement [from the Borrower, Miniventures of NY, Inc.] . . . of all costs and expenses incurred by [the] Bank in connection with this Amendment  . . . including, as applicable, . . . legal fees and expenses of Bank's counsel, including the market value of services of in-house counsel." *Id.* at 25.

Furthermore, Williams' Guaranty explicitly includes within the indebtedness "any and all obligations of Borrower to [the] Bank for reasonable attorneys' fees and all other costs and expenses incurred by [the] Bank (i)  in the collection or enforcement of any debts, liabilities, and obligations of Borrower [Minventures] to Bank."  Doc. 1, at 41 (¶ 2(d)).   The Guaranty further provides: "Guarantor agrees to pay all reasonable attorneys' fees . . . and all other costs and expenses that may be incurred by [the] Bank (a) in the enforcement of this Guaranty").  *Id.* at 45 (¶ 23, "Costs and Expenses").

On or about September 5, 2018, when Bank of America assigned the loan to MBC,  MBC stepped into Bank of America's shoes with respect to its rights to recover costs and attorneys' fees.

*Id.* ¶¶ 18, 25. Accordingly, both defaulting defendants owe the outstanding debt, as well as attorneys' fees and costs, to MBC.

### 4. Attorneys' Fees

As of September 17, 2020, in conjunction with moving for default judgment, Plaintiff's counsel, Houston Lowry, has requested an award of $60,986.50 in attorneys' fees and costs.[8]  *See* Doc. 25, at 6. In calculating attorneys' fees, he initially employs the Second Circuit's lodestar test, multiplying "a reasonable hourly rate [by] the reasonable number of hours required by the case " to create a "presumptively reasonable fee." *Id.* at 3 (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). He then adjusts the fees upward to a figure he describes as "high" based on his claim that "this case was taken on a one[-]third contingency basis." *Id.* at 4.

To perform a lodestar calculation, Attorney Lowry uses a "blended hourly rate" of $378.33 (just under his "usual and customary rate" of $400.00 per hour), a rate he asserts is in line with attorneys' fees of $400/hour recently awarded to him by Judges Underhill and Dooley of this District. *See* Doc. 25, at 4-5 (citing *EWOil Sp. Z.O.O. v. Black Diamond Int'l Forest Group, LLC,* No. 17cv978 (SRU) (D. Conn. Aug. 31, 2017), at Doc. 24; and *Dipippa v. Fulbrook Capital Management*, No. 19cv1386 (KAD) (D. Conn. April 22, 2020), at Doc. 113). Lowry states that a total of 18 hours were expended on the matter, including hours of other "personnel working on this file." Doc. 25 at 6. He fails to name these other personnel or to detail either his own hours (with dates and amounts of time) or theirs. He simply describes the legal work performed as "a review of

---

[8]  As discussed *supra*, such a request is not one for a "sum certain" under Federal Rule of Civil Procedure 55(b)(1) because it includes attorneys' fees, which require a judicial determination as to what constitutes reasonable fees. *Nat'l Automatic Sprinkler*, 2011 WL 773444, at * 1; *451 Mktg.*, 2019 WL 11894409, at *3*; Ace Grain Co.,* 11 F.R.D. at 366.

documents and following up with the court." *Id.*

Upon completing his lodestar calculation of attorneys' fees, Lowry then adjusts his requested amount upward to reflect his contingency fee agreement with Plaintiff.  In particular, on behalf of Plaintiff, he requests "sufficient attorney's fees to make [Plaintiff] whole after agreeing to have this case handled on a one third contingency basis." *Id.*  Rather than *one-third* of the debt owed, Plaintiff requests attorneys' fees of *one-half* or "50% of the amount of debt" owed by the Defendants (one half of $118,920.62) or $59,460.31, plus a $1000 "suit fee" and "disbursements" (or costs) of $526.50, for a total of $60,986.50.[9]  Lowry fails to describe the basis for the "suit fee" or to itemize the "disbursements."

As to his lodestar calculation, Lowry's alleged total – a blended hourly rate of $378.33 times 18 hours, totaling $6,809.94 – is unsubstantiated.  Lowry has failed to present detailed contemporaneous records of the attorneys and/or personnel who performed legal work, including their hourly rates and the dates, hours, and nature of services they provided.  In addition, with respect to his request for an upward adjustment to reflect the fact that "this case [was] handled on a one third contingency basis," Doc. 25, at 6, Lowry offers no evidence of the terms of said contingency fee agreement with MBC and no explanation why he seeks one-half of the total debt, as opposed to one-

---

[9]  Adding the proposed figures, the Court notes that the total would actually be $60,986.81.  Moreover, as to the bases for Lowry's calculation, the $118,920.62 "amount of debt" appears in Plaintiff's "Brief in Support of Request for Attorney's Fees," which reflects the amount of principal and interest owed by Defendants as of September 17, 2020.  As of March 30, 2021, Attorney Lowry informed the Court that the total debt owed was $124,748.38.  Doc. 27, at 1.  Using that later figure, half of the debt owed would equal $62,374.19.  Combined with his requested $1000 "suit fee" and disbursements of $526.50, the total sought would be $63,900.69 at of that date.

third.[10]

### a. Lodestar approach

#### 1. General principles and calculation

The Second Circuit has traditionally recognized "the lodestar" as the first and most often employed method to determine what is a reasonable attorneys' fee.  Using this method, the district court "scrutinizes the fee petition to ascertain the number of hours reasonably billed . . . and then multiplies that figure by an appropriate hourly rate." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citation omitted). *See also  Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (The " most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

With the lodestar, the Second Circuit "established a two-step process for the method of exercising [its] discretion in calculating [fee] awards." *Hubbard v. Total Commc'ns, Inc.*, No. 3:05-cv-1514 (VLB), 2010 WL 1981560, at *2 (D. Conn. May 18, 2010) (citing  *Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496, 505 (2d Cir.1981)). In particular, "[t]he first step is a quantitative analysis in which the court establishes a 'lodestar' or 'presumptively reasonable' figure, obtained 'by multiplying the number of hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area.'"  *Id.* (quoting *Cohen*, 638 F.2d at 505).

Next, after completing the initial computation, the court conducts a qualitative analysis in

---

[10]  One-third of the total debt as of September 17, 2020, would be 1/3 of $118,920.62 or $39,640.21. Moreover, if the Court accepts Lowry's March 2021 figure of $124,748.38 for "total owed," one-third would only be $41,582.79. Both of these figures fall well below 50% of the total debt owed on these dates.

which, in its discretion, it adjusts the lodestar figure upward or downward to take account of such subjective factors as the risk and complexity of the litigation and the quality of the representation. *Goldberger,* 209 F.3d at 47. Under these procedures, a different rate of compensation may be set for different types of litigation tasks, and an attorney whose rates are higher than those prevailing in the community may receive less than his own usual charges. *Hubbard,* 2010 WL 1981560, at *2. *See also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010) (While a district court must calculate the lodestar, it is not "conclusive in all circumstances" because the lodestar may be adjusted in the "rare circumstances" when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee."). Nonetheless, "[w]hile the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances, failing to calculate it as a starting point is legal error." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

The Second Circuit thereafter clarified the proper analysis with respect to attorneys' fees in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany & Albany County Bd. of Elections,* 522 F.3d 182 (2d Cir. 2008). In *Arbor Hill*, the Second Circuit found the term "lodestar" to be outdated and instead used the term "presumptively reasonable fee." *Id.* at 183,189-90. Despite this altered terminology, following *Arbor Hill*, the Second Circuit confirmed that "[w]hile the *Arbor Hill* panel indicated its preference for abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method," *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 n.2 (2d Cir. 2010). *See also Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) ("In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number

of hours required by the case—[which] creates a presumptively reasonable fee."")(citation omitted);

*Millea*, 658 F.3d at 166 ("Both this Court and the Supreme Court have held that the lodestar—the

product of a reasonable hourly rate and the reasonable number of hours required by the case—creates

a "presumptively reasonable fee.") (citing, *inter alia, Arbor Hill*, 522 F.3d at 183).

Recently in *Ortiz v. City of New York*, 843 F. App'x 355 (2d Cir. 2021), the Second Circuit

stated, with respect to attorneys' fees:

> We have explained that district courts evaluating a request for attorneys' fees must
> conduct a lodestar analysis, which calculates reasonable attorneys' fees by
> multiplying the reasonable hours expended on the action by a reasonable hourly rate,
> which results in a presumptively reasonable fee. It is only after this initial calculation
> of the presumptively reasonable fee is performed that a district court may, in
> extraordinary circumstances, adjust the presumptively reasonable fee when it does
> not adequately take into account a factor that may properly be considered in
> determining a reasonable fee.

843 F. App'x at 358 (citations and internal quotation marks omitted).  Accordingly, a lodestar-type

analysis remains the initial and primary step in determining "presumptively reasonable" attorneys'

fees.  The Court's adjustments to this amount, depending on such factors as the "complexity of the

case," remain within its discretion.  *Id*. at 358.

It thus follows that  the Second Circuit's "review of a district court's fee award is highly

deferential." *Id.* "Indeed, [the Second Circuit has] recently reiterated that 'we afford district courts

broad discretion in awarding attorneys' fees because they are much closer to the details of each

individual case and can better determine what is reasonable and appropriate in the fee calculus for

the particular case." *Id.* (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019)).

With respect to the presumptively reasonable figure, and any adjustments, the fee applicant

bears the burden of demonstrating both entitlement to and the reasonableness of the fee sought.

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). This burden must be met by making an appropriate evidentiary showing.   After "documenting the appropriate hours expended and hourly rates," *Hensley*, 461 U.S. at 437, "a fee applicant seeking an enhancement must produce 'specific evidence' that supports the award," *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 553 (2010) (citing *Blum v. Stenson*, 465 U.S.886, 899, 901 (1984)). An enhancement must be based on "evidence that enhancement was necessary to provide fair and reasonable compensation." *Id.* (quoting *Blum*, 465 U.S. at 901).  *See also Hernandez v. Berlin Newington Assocs., LLC*, No. 3:10-CV-01333 (VLB), 2018 WL 3599735, at *1 (D. Conn. July 27, 2018) ("Enhancement of reasonable attorneys' fees may be permitted only in 'rare and exceptional cases supported by both specific evidence on the record and detailed findings by the lower courts.'") (quoting  *Huntington Branch, N.A.A.C.P. v. Town of Huntington, N.Y.*, 961 F.2d 1048, 1050  (2d Cir. 1992)).

As to specific calculation, "[t]he lodestar should be based on 'prevailing market rates,' for comparable attorneys of comparable skill and standing in the pertinent legal community." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (quoting *Blum*, 465 U.S. at 895). In other words, these rates should be consistent with those "for similar services by lawyers of reasonably comparable skill, experience, and reputation" in the "prevailing community," defined by reference to "the district in which the court sits." *Sony Elecs., Inc. v. Soundview Techs., Inc*, 389 F. Supp. 2d 443, 447 (D. Conn. 2005) (citation and internal quotation marks omitted). Also included in reasonable attorneys' fees are "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998) (quoting *United States Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir.1989)).

### 2. Necessary documentation – *Carey*

To enable a court to calculate the lodestar amount, the fee applicant must support his or her application with contemporaneous time records specifying the date, hours expended, and nature of work performed. *See Hensley*, 461 U.S. at 437.  As the Second Circuit noted in *Marion S. Mishkin Law Office v. Lopalo*:

> In *New York State Ass'n for Retarded Children, Inc. v. Carey*, our Court crafted a new rule: "any attorney ... who applies for court-ordered compensation in this Circuit ... must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." 711 F.2d 1136, 1148 (2d Cir.1983). The "[f]ailure to do so results in denial of the motion for fees." *Riordan* [*v. Nationwide Mut. Fire Ins. Co.*], 977 F.2d [47,]53 [(2d Cir. 1992)]. Thus,
>
> > All applications for attorney's fees, whether submitted by profit-making or non-profit lawyers, for any work done after the date of this opinion should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done.
>
> *Carey*, 711 F.2d at 1154 (numbering omitted). "*Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir.2010) ("Scott I ").

767 F.3d 144, 148 (2d Cir. 2014)

As long as the attorney has "'made  contemporaneous entries as the work was completed, and that . . . billing was based on these contemporaneous records,' *Carey* is satisfied." *Id.* at 149 (quoting *Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir.1994); and citing *David v. Sullivan*, 777 F.Supp. 212, 223 (E.D.N.Y.1991) ("Attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees.") and *Lenihan v. City of New York*, 640 F.Supp. 822, 824 (S.D.N.Y.1986) (typewritten transcription of

original records satisfy *Carey* )).

As this Court stated in *Handschu v. Special Services Division*: with respect to "Judge Newman's instruction in *Carey*" that attorneys applying to a court for fees must document the application with contemporaneous time records. –

> "These records should specify, for each attorney, the date, the hours expended, and the nature of the work done." [*Carey*,] 711 F.2d at 1148. There are two elements to this mandated record keeping: time and content. As to time: The records must be made contemporaneously, which is to say, while the work is being done or, more likely, immediately thereafter. Descriptions of work recollected in tranquility days or weeks later will not do.[11]

727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010).

Because attorney applicants are required "to keep and present records from which the court may determine the nature of the work done, [and] the need for and the amount of time reasonably required[,] where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir.1987).

Moreover, hours that are excessive, redundant, or otherwise unnecessary should be excluded. *Hensley, 461 U.S.* at 434.  For example, if an attorney "keep[s] time in an inefficient manner" – such as electing not to use "a computer timekeeping system" – that attorney cannot "recoup the costs flowing"  from hours spent reconstructing contemporaneously kept time records while "preparing

---

[11]  In the words of William Wordsworth, in preface to his lyrical ballads:

[P]oetry is the spontaneous overflow of powerful feelings: it takes its origin from emotion recollected in tranquillity . . . .

Wordsworth, William, and Samuel Taylor Coleridge. *Lyrical Ballads*. London: Routledge Classics, 2005. Unlike the composition of poetry, reconstructing one's legal work must be based on contemporaneously made records, as opposed to leisurely recollection.

the application." *Marion S. Mishkin L. Off.*, 767 F.3d at 150 (citing *Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir.1986)).

As discussed *supra*, Attorney Lowry has failed to present the Court with the names and rates of those who worked on the case.   He has also failed to provide detailed contemporaneous records of the dates, hours expended, and nature of work done.   In short, he has failed to comply with *Carey*.

Counsel has also failed to itemize his costs.   A court may award "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients" as a portion of attorney's fees. *United States Football League*, 887 F.2d at 416.   However, "the party seeking to recover costs must adequately document and itemize the costs requested." *Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab.-Mgmt. Cooperation, Pension & Welfare Funds v. Allied Design & Constr.*, LLC, 217 F. Supp. 3d 671, 678 (E.D.N.Y. 2016) (internal quotation marks omitted) (collecting cases).

### b. Contingency fees

A  second method recognized by the Second Circuit for awarding reasonable attorneys' fees is setting some percentage of the recovery as a fee. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).   For example, in cases brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the district court may award a percentage of the recovery where there is a contingency agreement signed by counsel and the fees sought under that agreement are not excessive in relation to the calculated lodestar.  *See, e.g.*, *Gomez v. Shine Servs. LLC*, No. 20-CV-4190 (BCM), 2021 WL 1391782, at *2 (S.D.N.Y. Apr. 13, 2021) ("The proposed attorney's fee award (one-third of the aggregate settlement, net of costs) is also fair and reasonable, . . . because it is consistent with the contingency fee agreement signed by the plaintiff. . . and is only approximately $500 higher than

counsel's lodestar . . . .").

In the instant case, Attorney Lowry requests an enhancement of the lodestar amount.  In particular, he provides a rounded, presumptively reasonable lodestar-based calculation of $6,810 (his firm's hourly rates for 18 hours of work expended) but then seeks one-half of the amount of debt owed pursuant to a one-third contingency fee arrangement. As to the requested attorneys' fees, Plaintiff has failed to supply the necessary detailed documentation to support such a request.  He has failed to provide records to support his lodestar calculation.  *See Carey*, 711 F.2d at 1147-48 (mandating that counsel provide contemporaneous records regarding legal services provided, including name(s) and experience level(s) of counsel, dates, numbers of hours, and description of services rendered, in order to recover attorneys' fees).  Furthermore, he has failed to present the terms of his alleged contingency fee contract with MBC.

In addition, Lowry has failed to provide facts or any legal basis, case or statute, to support a fee request in excess of his alleged one-third contingency fee contract.  Yet, he seeks an amount larger than a combined award of lodestar *plus* a one-third contingency fee –  which incidentally would, on its face, grant duplicative recovery for the same legal services.  *See, e.g. Hubbard v. Total Commc'ns, Inc.*, No. CIV.A.3:05CV1514VLB, 2010 WL 1981560, at *3 (D. Conn. May 18, 2010) (disallowing recovery of duplicative attorneys' fees, holding that "an attorney who represents a client on a contingency basis is not entitled to a windfall of collecting both the contingency fee and the court awarded attorney's fee").  Moreover, lodestar calculations, which the Second Circuit considers presumptively reasonable, are often preferred.  *Hardy v. Saliva Diagnostic Sys., Inc.,* 52 F. Supp. 2d 333, 342 (D. Conn. 1999) ("Rather than base its award on the contingency agreement, the Court will determine attorneys' fees under a lodestar approach.").  *See also Millea*, 658 F.3d at 166 ("Both this

Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'") (quoting *Arbor Hill*, 522 F.3d at 183 and citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542[, 552] (2010)).

If Lowry elects to seek  recovery based on the terms of a contingency-fee arrangement with Plaintiff, as Judge Dooley of this District recently noted in the context of a Social Security disability case: "[B]efore a court can award payment flowing from a contingency fee agreement, the court must conduct an independent check to assure that the agreement yields reasonable results." *Rodriguez v. Berryhill,* No. 3:17-CV-00868 (KAD), 2020 WL 6364764, at *2 (D. Conn. Oct. 29, 2020) (citing *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002)).  For example, in cases where contingency fees are allowed by statute (*e.g.*, 42 U.S.C. § 406(b), governing Social Security appeals), "[l]odestar calculations should not displace contingency fee agreements, but in determining whether a contingency fee is reasonable, the court may require an attorney to submit a record of the hours spent litigating the case as well as the attorney's hourly billing charge for non-contingent fee cases."  *Id.* In other words*,* to assess the reasonableness of a continency fee, the Court may require the attorney applicant to  present contemporaneous records of the dates, hours expended, and names and rates of those who worked on the case.

Similarly, under Connecticut law, the Connecticut Supreme Court requires a "reasonableness" analysis prior to granting an award under a contingency fee agreement. *Schoonmaker v. Lawrence Brunoli, Inc.,* 265 Conn. 210, 270 (2003). First, a court "must analyze the terms of the agreement itself," and "[i]f the agreement is, by its terms, reasonable, [then] the trial court may depart from its terms only when necessary to prevent substantial unfairness to the party,

typically a defendant, who bears the ultimate responsibility for payment of the fee." *Id.* at 270–71. "[I]f the trial court concludes that the agreement is, by its terms, unreasonable, it may exercise its discretion and award a reasonable fee in accordance with the factors enumerated in rule 1.5(a) of the Rules of Professional Conduct." *Id.* at 272.

The Court recognizes that in Connecticut, there are "long-accepted grounds [to] allow for percentage-based contingent fee arrangements." *Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 415 (D. Conn. 2017) (citing, *inter alia*, *McCullough v. Waterside Associates*, 102 Conn. App. 23, 29-30 (2007)). "[A] contingency fee arrangement provides an incentive to counsel to take on cases that are less than sure winners." *Blizzard v. Astrue*, 496 F. Supp. 2d 320, 325 (S.D.N.Y. 2007). However, if a contingency fee agreement is "by its terms, unreasonable, [the Court] may exercise its discretion and award a reasonable fee in accordance with the factors enumerated in rule 1.5(a) of the Rules of Professional Conduct." *Fraser v. Wyeth, Inc.*, No. 3:04CV1373 JBA, 2013 WL 4012764, at *6–7 (D. Conn. Aug. 5, 2013) (citation omitted).[12]

In the case at bar, the amount of a one-third contingency fee may be reasonable in theory. *See, e.g., Jennings*, 263 F. Supp. 3d at 415 (holding one-third contingency fee arrangement "permissible and reasonable" in light of the "long-accepted grounds that allow for percentage-based contingent fee arrangements"); *Fraser*, 2013 WL 4012764, at *7 (based on contingency fee

---

[12] Under Connecticut Professional Conduct Rule 1.5, contingency fees are permitted only if documented "in a writing signed by the client and . . . stat[ing] the method by which the fee is to be determined, including the percentage or percentages of the recovery that shall accrue to the lawyer as a fee in the event of settlement, trial or appeal, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and whether such expenses are to be deducted before or after the contingent fee is calculated." Conn. R. Prof. Conduct 1.5(c). *See also* n.14, *infra*, re: proof of unwritten contingency fee agreements. Second, even if properly documented, the contingency fee specified must be reasonable under the circumstances. Conn. R. Prof. Conduct 1.5(a).

provision in Conn. Gen. Stat. § 52-251c, the Court "conclud[ed] that Plaintiffs' contingency fee agreement providing for a 33.33% contingency fee [was] reasonable"). However, Lowry has failed to present the Court with the actual terms of the contingency fee agreement at issue, legal precedent to support fees under that agreement, and any explanation why the particular agreement's terms are reasonable and appropriate.[13]

As presented by Lowry, one-third of the debt owed, as calculated on March 30, 2021, would equal approximately $41,582.79, a figure six times larger than Lowry's lodestar calculation of $6,810. Lowry, however, requests one half of the debt owed, $62,374.19 as of March 30, 2021, plus a nebulous $1,000 "suit fee" and $526.50 in costs or disbursements. Even before adding costs, the requested amount would be more than nine times the presumptively reasonable lodestar of $6,810. "Although . . . the court may, under appropriate circumstances, take into consideration a plaintiff's contingency fee agreement with his attorney, the court is limited to awarding only reasonable litigation costs." *Kregos v. The Latest Line, Inc.*, No. 5-92-CV-398 (WWE), 1998 WL 696007, at *4 (D. Conn. Aug. 31, 1998) (citing *Berry v. Loiseau*, 223 Conn. 786, 831 (1992)). "If the award under the contingency fee agreement does not reflect reasonable litigation costs, then the court in its discretion must determine a more appropriate award." *Id.* Thus, where plaintiff's counsel sought a fee that was "only slightly less than double the amount of its billable fees," Judge Eginton of this District instead awarded as "a reasonable fee" an amount that was "approximately 25% of the compensatory damages award," which "also represent[ed] the amount the court would find reasonable under the lodestar formula after exclusion of duplicative work" by counsel "in getting up

_____

[13] For example, fee enhancements to lodestar multipliers in statutory fee-shifting cases for contingency are banned in equitable fund cases. *In re Bolar Pharm. Co., Inc., Sec. Litig.*, 800 F. Supp. 1091, 1095 (E.D.N.Y. 1992).

to speed on a case they took rather late in the litigation." *Id.*

If Lowry requests fees in line with a contingency fee arrangement, he must provide the Court with his contemporaneous work records to support his comparative lodestar-type calculation. Moreover, he must provide the terms of the contingency fee arrangement, as well as the current total amount of the debt owed at this time.[14]  He must also explain why – despite his statement that the fee in "the case was placed on a one[-]third contingency basis" – he  seeks  recovery of one-half of the debt owed.[15]  Doc. 25, at 3.

Finally, the Court finds no basis in the record to award Lowry a $1,000 "suit fee."  Absent any explanation for this amount, the Court finds no justifiable reason to award this mystery fee.

Attorney Lowry is reminded that  in federal court, "[t]he size of an award of attorney's fees lies largely within the discretion of the district court."  *Hubbard ,* 2010 WL 1981560, at *2. The burden is on him, the fee  applicant, to establish both his entitlement to the fee award and the reasonableness of the fee claimed.  *Hensley*, 461 U.S. at 437. To meet this burden, he must make "an appropriate evidentiary showing."  *Hubbard*, 2010 WL 1981560, at *2 (citation omitted).

---

[14] "[U]nder Connecticut law, unwritten contingency fee agreements are not enforceable if the agreement relates to a personal injury, wrongful death, or property damage case." *O'Connor v. Norman,* No. 3:08CV1773 (MRK), 2011 WL 219666, at *5 (D. Conn. Jan. 21, 2011).  However, if the claims include fraud, breach of contract, conversion, etc., an unwritten contingency fee may be enforceable.  *Id.*  In those circumstances, "the Court will examine documentary evidence and hear testimony about the terms of the parties' unwritten attorney fee agreement—including whether the parties ever actually reached an agreement." *Id.*

[15] In light of the few pleadings filed in this case and given the fact that Defendants filed no appearance, much less opposition, there does not appear to have been complexity of issues or voluminous filings.  Attorney Lowry simply filed a complaint to collect the money owed by Defendants under the loan agreements and guaranty. He subsequently filed pleadings seeking default.  He  thus lacks a basis to argue that the case has been unusually time-intensive or difficult for his firm.

Furthermore, an award of damages may be "far from reasonable" if it "burdens [the Defendants] twice for [the attorney's] services" and/or is "more than double the amount of [the attorney's] billable fees" under the lodestar approach. *Kregos*, 1998 WL 696007, at *4. In short, the Court must determine whether an award of the fee requested is reasonable or "would amount to a windfall" for the attorney. *Begej v. Berryhill*, No. 3:14-CV-1284(WIG), 2019 WL 2183105, at *2 (D. Conn. May 21, 2019).

## III.  CONCLUSION

Under the loan and guaranty agreements at issue, Defendants were obligated to repay the funds loaned to Miniventures by Bank of America. Defendants failed to make the required payments to Bank of America and thereafter to its assignee, Plaintiff MBC Ventures, LLC. The amounts owed to Plaintiff remain due and outstanding. To date, Defendants have also failed to appear or defend in this action. However, despite careful review of the pleadings, facts, and relevant authorities regarding default, the Court may not grant Petitioner's two " Motions for Default Judgment" [Doc. 23 & 24] at this time.

First, the Court's subject matter jurisdiction has not been sufficiently proven. Specifically, the citizenship of individual Defendant Shayla M. Williams remains unresolved. Rather than simply alleging that she is a *resident* of Connecticut, Plaintiff must establish her *citizenship.* To do so, Plaintiff must file a sworn affidavit with facts to prove Williams' *domicile* at the time the action commenced and thus her citizenship.

Thereafter, upon resolving its subject matter jurisdiction, the Court will either dismiss the case (if the Court lacks jurisdiction) or consider the evidentiary submissions and/or hold a hearing to make a proper determination regarding the amount of damages to be awarded to Plaintiff,

including attorneys' fees and costs.  In contrast to damages, attorneys' fees are not  "sums certain" in that they require a judicial determination as to what constitutes reasonable fees.  *Nat'l Automatic Sprinkler,* 2011 WL 773444, at *1.  Evidence must be presented by Plaintiff's counsel to substantiate the requested amounts of said fees.  At present, even if subject matter jurisdiction had been properly pled, the total amount of debt owed and attorneys' fees and costs to be awarded have not been fully established by papers presented by Plaintiff's counsel.  *See Carey,* 711 F.2d at 1147-48, 1154 (counsel must provide contemporaneous work records); *Trustees of Empire State Carpenters Annuity*, 217 F. Supp. 3d at 678  (party seeking to recover costs must adequately document and itemize the costs requested).

If subject matter jurisdiction  is proper, upon the Court's analysis and approval of damages, attorneys' fees, and costs, the Clerk may be directed to enter default judgment in favor of MBC Ventures, and against Defendants Miniventures of NY, Inc., and Shayla M. Williams.

At present, in light of the foregoing, the Court makes the following **ORDERS**:

- Plaintiff must establish diversity of citizenship jurisdiction by making the requisite showing that at the time the action commenced,  Defendant Shayla M. Williams was a citizen of a state that is diverse from New York, as opposed to merely *a resident* of Connecticut.  Plaintiff must investigate the facts of Williams' citizenship and file an affidavit to report its findings to the Court on or before **September 10, 2021.**

- Plaintiff shall submit an updated amount of debt Defendants owe  to Plaintiff under the Loan Agreement, Loan Modification Agreement,  and Guaranty, which will be calculated and submitted by affidavit by Plaintiff or an accountant or financial expert capable of formulating and verifying said amount on or before **September 10, 2021**.

- On or before **September 10, 2021**, Plaintiff must file a supplemental brief  and accompanying documentation specifying the bases for counsel's requested attorneys' fees. To support his baseline lodestar calculation,  Plaintiff's counsel shall provide

the legal experience of each attorney and contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done.  To support enhanced fees under a contingency fee arrangement, counsel must present the grounds upon which any requested contingency fee is reasonable and appropriate. He must submit the terms of the relevant agreement, the calculation of his fees thereunder, and the legal basis for recovery (case precedent, statute, etc.).  Plaintiff must also define the "suit fee" requested and itemize "disbursements" or costs, providing receipts or other proof.

•      Upon review of the mandated submissions, the Court will determine whether it will: hold an evidentiary hearing; refer the matter to a Magistrate Judge for a  hearing and/or recommended ruling  regarding the appropriate damages, fees and costs to be awarded; or rule based on affidavits and submissions.

Plaintiff's motions for default judgment [Doc. 23 & 24] remain *sub judice*.  In the event that there is subject matter jurisdiction and Plaintiff presents sufficient evidence for the Court to determine the amount of a reasonable, just award to Plaintiff, the Court will enter final default judgment against each Defendant.

It is SO ORDERED.

Dated: New Haven, CT
          August 20, 2021


                                                     /s/Charles S. Haight, Jr.
                                                     CHARLES S. HAIGHT, JR.
                                                     Senior United States District Judge